JS 44 (Rev. 10/20)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
RENEE P. FAGAN, individually and as a parent, of a special needs minor child, MF:

**DEFENDANTS**
COUNCIL ROCK SCHOOL DISTRICT BOARD OF EDUCATION  et al

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
2 U.S.C. §1983 - Violation of Substantive Due Process (Fourteenth Amendment)
Brief description of cause:
Violation of Substantive Due Process (14th Amendment), Discrimination by Commonwealth & its political subdivisions.(PA Const. Art. I, § 11, 25 & 2

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
September 22, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **Renee P. Fagan, 40 Rembrandt Lane, Holland, PA 18966**

Address of Defendant: COUNCIL ROCK SCHOOL DISTRICT BOARD OF EDUCATION, 30 N. Chancellor Street; Newtown, PA 18940

Place of Accident, Incident or Transaction: **Bucks County School District**

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: September 22, 2021 _____  _____
Attorney-at-Law / Pro Se Plaintiff    Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A. Federal Question Cases:**
- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B. Diversity Jurisdiction Cases:**
- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: September 22, 2021 _____  _____
Attorney-at-Law / Pro Se Plaintiff    Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RENEE P. FAGAN, individually and as a parent, of a special needs minor child, MF;<br><br>   Plaintiff,<br><br>    v.<br><br>COUNCIL ROCK SCHOOL DISTRICT BOARD OF EDUCATION; DR. ROBERT FRASER, Ed.d, in his individual capacity and in his official capacity as Superintendent of the COUNCIL ROCK SCHOOL DISTRICT and ANDY BLOCK, DENISE BROOKS, MARK BYELICH, JOSEPH L. HIDALGO, KRISTIN MARCELL, MARIANN MCKEE, EDWARD SALAMON, EDWARD F. TATE, III, DR. MICHAEL THORWART, all in their individual capacities and in their capacities as members of the COUNCIL ROCK, SCHOOL DISTRICT BOARD OF EDUCATION,<br><br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )) | CIVIL ACTION NO.:_____ |

## COMPLAINT

Plaintiffs, Renee P. Fagan, individually as a sui juris *pro se* litigant and as a parent, of a special needs minor child, MF, without the assistance of an attorney, by exercising of the right to contract and refusal to CONSENT, are before this Court by Special Appearance and without waiving any rights, remedies or defenses, statutorily or procedurally, hereby, file this Complaint against, Council Rock School District Board ("Board "), Dr. Robert Fraser, Ed.d, in his individual capacity and in his official capacity as Superintendent of the Counsel Rock School District; and Andy Block, Denise Brooks, Mark Byelich, Joseph L. Hidalgo, Kristin Marcell, Mariann McKee, Edward J. Salamon Jr. , Edward F. Tate, III, and Dr. Michael Thorwart, all

individually elected officials sued in their individual capacity and in their capacity as members of the School Board (collectively, "Defendants"). In support of the claims set forth herein, Plaintiffs allege and avers as follows:

## PARTIES

1.    Plaintiff, MF, is a minor child who resides in and attends Council Rock School District ("CRSD"), in Bucks County, Pennsylvania. Plaintiff, a special needs minor child is and was at all times relevant hereto a student at Council Rock Township School District, public school. Suit is brought, herein on Plaintiff, Renee P. Fagan, as a parent of minor child MF.

2.    Plaintiff, Renee P. Fagan is an adult individual who is a resident and taxpayer in the Council Rock School District, in Bucks County, Pennsylvania. Plaintiff, Renee P. Fagan is the parent and legal guardian of a special needs minor child MF.

3.    Defendant Council Rock School District Board of Education (the "School Board" or the "Board") is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations and procedures in effect for the Council Rock School District

4.    Defendant, Dr. Robert Fraser, a school director member, was at all relevant times the Superintendent of the Council Rock School District; in that capacity, acting under color of law, responsible for the implementation of all official governmental laws, policies, regulations and procedures governing the Council Rock School District. He is sued in his official and individual personal capacities.

5.    Defendant, Edward J. Salamon, Jr. is a Bucks County resident, a school director member of the School Board, sued here in his individual and representative capacity. Edward J. Salamon, Jr. is currently the President of the School Board.

6.    Defendant, Mariann McKee, is a Bucks County resident a school director member of the School Board, sued here in her individual, and representative capacity.

7.    Defendant, Edward F. Tate, III is a Bucks County resident a school director member of the School Board, sued here in his individual and representative capacity.

8.    Defendant, Joseph Hidalgo is a Bucks County resident a school director member of the School Board, sued here in his individual and representative capacity.

9.    Defendant, Andy Block is a Bucks County resident a school director member of the School Board, sued here in his individual and representative capacity.

10.    Defendant, Mark Byelich is a Bucks County resident a school director member of the School Board, sued here in his individual and representative capacity.

11.    Defendant, Dr. Michael Thowart is a Bucks County resident a school director member of the School Board, sued here in his individual and representative capacity.

12.    Defendant, Kristin Marcell is a Bucks County resident a school director member of the School Board, sued here in her individual and representative capacity.  Kristin Marcell is currently the Vice President of the School Board.

13.    At all relevant times hereto, the school director members of the School Board and individual Defendants were acting under color of state law.

## JURISDICTION AND VENUE

14.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

15.    This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §1367, 28 U.S.C. § 2201, and 42 U.S.C. §1983.

16.    There exists an actual and justiciable controversy between Plaintiffs and Defendant requiring resolution by this Court.

17.    Plaintiffs have no adequate remedy at law.

18.    Venue is proper before the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §1391 because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Pennsylvania.

## FACTS

19.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

**A.    Council Rock School District Board of Education**

20.    The Council Rock School District Board of Education is "composed of nine citizens who are representatives of the residents of Borough of Newtown, Newtown Township, Northampton Township, Upper Makefield Township, and Wrightstown Township. Each board are created statutorily, consists of nine (9) members who serve four-year terms. Elections for school board occur every two years. Five seats up for election and then two years later, four seats are up for election. Terms for all school directors are four years unless there is an unexpired term on the ballot. That seat would be for a two-year term. Board members are elected by district. Only the registered voters of a particular area may vote for a particular seat in a by-district election. The Council Rock School District school board are elected by the registered voters of a particular area and seat in a by-district election. Members appear on the primary ballot as both a Republican and/or a Democrat candidate, but may only circulate a petition on behalf of a party of which he/she is a registered member; a registered member of the other party may circulate a petition for members of that party to request your name be on the ballot

21.    The nine individuals currently serving as elected School Board Members are Defendants, Dr. Robert Fraser, in his individual capacity and in his official capacity as

Superintendent of the Council Rock School District and Andy Block, Denise Brooks, Mark Byelich, Joseph L. Hidalgo, Kristin Marcell, Mariann McKee, Edward Salamon, Jr., Edward F. Tate, III, Dr. Michael Thorwart.

22.     Defendant, Dr. Robert Fraser, Ed.d, Superintendent of the school director member District, holds a Master degree in Education of At-Risk Students and a Doctorate degree in Educational Leadership.

23.     Defendant, Edward J. Salamon, Jr., the President of the Council Rock School District holds a degree in Criminal Justice and Police Science. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Salamon signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of his ability, and with the laws "now in effect and hereafter to be enacted.

24.     Defendant, Kristin Marcell, the Vice-President of the Council Rock School District holds a degree in Political Science and MPP in Public Policy. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Ms. Marcell signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his/her duties as a school director member to the best of her ability, and with the laws "now in effect and hereafter to be enacted.

25.     Defendant, Denise Brooks, a school director member of the Council Rock School District holds a BA degree from Brandeis University.  In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Ms. Brooks signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of

Pennsylvania, and to faithfully and impartially discharge her duties as a school director member to the best of her ability, and with the laws "now in effect and hereafter to be enacted.

26.     Defendant, Mariann McKee, a school director member of the Council Rock School District is a former teacher. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Ms. McKee signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge her duties as a school director member to the best of her ability, and with the laws "now in effect and hereafter to be enacted.

27.     Defendant, Edward F. Tate, III, a school director member of the Council Rock School District holds a Bachelor's degree in English and a Master's degree in integrated marketing communications.  In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Edward F. Tate, III signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his duties as a school director member to the best of his ability, and with the laws "now in effect and hereafter to be enacted.

28.     Defendant, Joseph Hidalgo, a school director member of the Council Rock School District holds a degree in Environmental Science. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Joseph Hidalgo signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his duties as a school director member to the best of his ability, and with the laws "now in effect and hereafter to be enacted.

29.    Defendant, Andy Block, a school director member of the Council Rock School District holds a degree in Economics. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Block signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his duties as a school director member to the best of his ability, and with the laws "now in effect and hereafter to be enacted.

30.    Defendant, Mark Byelich, a school director member of the Council Rock School District holds a degree BA in B.A. from Lesley University and a degree in certified financial planning. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Mr. Mark Byelich signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his duties as a school director member to the best of his ability, and with the laws "now in effect and hereafter to be enacted.

31.    Defendant, Dr. Michael Thorwart, a school director member of the Council Rock School District holds a degree in Bachelor's and Ph.D. in Chemical Engineering. In accordance with Section 321 of the Pennsylvania Public School Code of 1949, Dr. Michael Thorwart signed an Oath of Office swearing support the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, and to faithfully and impartially discharge his duties as a school director member to the best of his ability, and with the laws "now in effect and hereafter to be enacted.

32.    This nine-member School Board unanimously appointed Defendant, Dr. Robert Fraser, Ed.d to serve as Superintendent of Schools.

33.    As Superintendent, Dr. Robert Fraser, Ed.d is charged with the administration of the CRSD.

**B.    Infliction of Emotional and Intentional Distress**

34.    Defendant has fostered either intentionally and/or negligently the fear mongering and intimidations tactics of district teachers in effort to enforce the overreaching policies of the school board.

35.    Plaintiff, MF, is a special need minor child with downs syndrome (DS), is non-verbal and extremely delayed in learning, and resides in and attends Council Rock School District, in Bucks County, Pennsylvania.

36.    Plaintiff, MF, is a special need minor child was at all times relevant hereto a student at Council Rock Township School District, public school.  Suit is brought, herein on Plaintiff, Renee P. Fagan, as a parent of minor child MF.

37.    Plaintiff, Renee P. Fagan is an adult individual who is a resident and taxpayer in the Council Rock School District, in Bucks County, Pennsylvania.

38.    Plaintiff, Renee P. Fagan is the parent and legal guardian of special needs child minor child MF.

39.    Defendants actions has caused Renee P. Fagan, parent and legal guardian of special needs child minor child MF emotional stress having to endure and watch said minor special needs child MF aspiring to be like everyone else.

40.    Plaintiff, MF, a special needs minor child currently has multiply therapies that all take place in the school settings.

41.    Plaintiff, MF, a special needs minor child relies on facial and psychical ques to understand communications and social norms.

42.    Defendants actions, optional or mandatory, has caused Plaintiff, MF, a special needs minor child, further learning delays due to his current teacher's use of masks during class.

43.    Defendants actions, optional or mandatory, has caused Plaintiff, MF, a special needs minor child, further learning delays due to his current therapist's mask use during sessions.

44.    Due to Defendants actions his current teacher and therapist's use of mask has caused Plaintiff, MF, a special needs minor child emotional stress.

45.    Due to Defendants actions last year, was Plaintiff, MF, a special needs minor child was forced to use online classes which consisted of approximately two calls a day for approximately 30 minutes.  Plaintiff, MF, a minor child, with his special needs was unable to then as is now to learn from this method.

46.    Defendants enacted mask mandates last year, Plaintiff, MF, a special needs minor child was forced to use online classes wherein he did not receive any of his needed therapies throughout the duration of the school's shut down which resulted in him losing a year worth of learning which caused him to fall further behind.  Any return to that kind of online format of learning is simply not an option.

47.    Plaintiff, MF, a special needs minor child, has downs syndrome wherein he has a flat sinus cavity that is easily congested and has difficulty draining. Defendants' actions, would cause Plaintiff, MF, a special needs minor child further mental deficiencies and loss of brain function wearing a mask. Even in play, it would cause Plaintiff, MF, a special needs minor child, to develop a sinus infection resulting in bacterial pneumonia and a hospital visit.

48.    With Defendants mask policies, currently in place regardless or optional or mandatory, their actions have caused Renee P. Fagan, parent and legal guardian of her special needs minor child MF undue financial burden, emotional stress, and harm.

49.     As a result of Defendants action with their mask policies it has caused Plaintiff Renee P. Fagan, parent and legal guardian of minor Plaintiff, MF, emotional stress having to endure and watch Plaintiff's minor special needs child aspiring to be like his peers.

50.     Plaintiff, MF, is a special needs minor child with downs syndrome and can get easily confused if he attempts to wear a mask aspiring to mimic the other children and teachers. He does not understand the dangerous health hazards of wearing a mask and wants to mimic the other children and teachers in order to belong.

51.     Defendants mask policies regardless of whether it is optional or mandatory, causes Plaintiff, Renee P. Fagan, parent and legal guardian of special needs child minor MF, to suffer fear and emotional stress having to endure and watch he minor special needs child MF yearning to be like others.

52.     Defendants are acting arbitrarily, under the color of law, and lack the necessary authority with their enactment of their masks mandates, optional or otherwise, are discriminatory thereby violating Plaintiff, MF a special needs minor child, federally protected rights. 42 U.S.C. §1983, proximately causing and inhibiting his needed therapies causing and creating division between the sects of people regarding of medical condition or other factors.

**C.     The Masking Requirement Causes Immediate and Irreparable Harm to Students, Staff, and Community.**

53.     In his Affidavit, attached hereto as **Exhibit "A"**, Stephen E. Petty, an expert in the field of Industrial Hygiene who has testified as to the futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19, states the following:

* * *

3.     I hold relevant industry certifications including board certifications as a C.I.H. (Certified Industrial Hygienist), a C.S.P. (Certified Safety Professional), and

as a P.E. (Professional Engineer) in six states (Florida, Kentucky, Ohio, Pennsylvania, Texas and West Virginia). My curriculum is attached hereto as **Exhibit i.**

4.     I have served as an expert in personal protective equipment and related disciplines in approximately 400 legal cases. I have often been certified as, and provided testimony as, an expert in these areas. My list of representative cases is attached hereto as **Exhibit ii.**

5.     For example, I am currently serving as an expert in the Monsanto Roundup and 3-M PFAS litigation. Recently I testified in four trials for the DuPont C-8 litigation.

6.     I taught Environmental and Earth Sciences as an adjunct professor at Franklin University.

7.     I hold nine U.S. patents, most related to heating, ventilation and air conditioning (HVAC) systems.

8.     I am a current member in good standing of the following relevant associations: American Industrial Hygiene Association (AIHA), American Board of Industrial Hygiene (ABIH), American Conference of Governmental Ind. Hygienists (ACGIH), American Institute of Chemical Engineers (AIChE), American Society of Refrigeration, Air Conditioning and Refrigeration Engineers (ASHRAE); Member ASHRAE 40 Std. and TC 2.3, and Sigma Xi.

9.     I am an expert in the field of Industrial Hygiene, which is the science and art devoted to the anticipation, recognition, evaluation, and control of those environmental factors or stressors — including viruses — arising in or from the workplace, which may cause sickness, impaired health and well-being, or significant discomfort among workers or among the citizens of the community

10.     Industrial Hygiene is fundamentally concerned the proper methods of mitigating airborne/dermal hazards and pathogens, as well as with the design and use of engineering controls, administrative controls and personal protective equipment, among other things.

11.     Medical doctors, virologists, immunologists, and many public health professionals are not qualified experts in these areas by virtue of those aforementioned credentials.

12.     On May 7, 2021, the Centers for Disease Control (CDC) updated its guidance, providing that the primary mechanism for transmission of Covid-19 is through airborne aerosols, and not, as previously stated, by touching contaminated surfaces or through large respiratory droplets, as also stated during previous periods of the pandemic.

13.     Airborne viral aerosols can consist of a single viral particle or multiple viral particles clumped together, and usually smaller than 5 µ (microns) in size. By comparison, droplets are >5 µ to >10 µ in size.

14.     A square micron is approximately 1/4000th the area of the cross-section of a human hair and 1/88th the diameter of a human hair. Covid particles are —1/10 of a micron or —1/40,000th the area of a cross section of a human hair or —1/1,000th the diameter of a human hair.

15.     A recent University of Florida study capturing air samples within an enclosed automobile cabin occupied by a Covid-positive individual showed that the only culturable Covid-19 virus samples obtained were between 0.25µ to 0.5µ in size. Particles smaller than 5µ are considered very small and/or very fine or aerosols.

16.     Very small particles do not fall by gravity in the same rate that larger particles do and can stay suspended in still air for a long time, even days to weeks.

17.     Because they stay suspended in concentration in indoor air, very small particles can potentially accumulate and become more concentrated over time indoors if the ventilation is poor.

18.     Very small airborne aerosols pose a particularly great risk of exposure and infection because, since they are so small, they easily reach deep into the lung. This explains in part why Covid-19 is so easily spread, and why so little Covid-19 is required for infection.

19.     Exposure to airborne aerosols is a function of two primary parameters: concentration and time. Less is better regarding both parameters.

20.     For many reasons, personal protective equipment (PPE) is the <u>least</u> desirable way to protect people from very small airborne aerosols. Moreover, masks are not PPE since they cannot be sealed and do not meet the provisions of the Occupational Safety and Health Administration (OSHA) Respiratory Protection Standard (RPS), namely 29 CFR 1910.134.

21.     Regarding PPE, facial coverings do not effectively protect individuals from exposure to very small airborne aerosols. A device referred to as a respirator is required to provide such protection.

22.     The AIHA, in their September 9, 2020 Guidance Document for COVID-19 **(Exhibit iii)** noted that the acceptable relative risk reduction methods must be >90%; mask were shown to be only 10% and 5% (see Exhibit iii - Figure 2) and far below the required 90% level.

23.     Similarly, Shah, et al, 2021 **(Exhibit iv),** using ideally sealed masks and particles 1 micron in size, reported efficiencies for the more commonly used

cloth masks and surgical masks of 10% and 12% respectively. No mask can be perfectly sealed, thus "real world" effectiveness would be even lower.

24.     Industrial hygienists refer to a "Hierarchy of Controls" that are typically implemented to minimize exposures, including exposures to very small airborne aerosols like Covid-19.

25.     Regarding practical or "engineering" controls, industrial hygienists focus on practices that dilute, destroy, or contain airborne hazards (or hazards in general).

26.     PPE — especially facial coverings — do not dilute, destroy, or contain airborne hazards. Therefore, facial coverings do not appear anywhere in the Industrial Hygiene (IH) Hierarchy of Controls for very small airborne aerosols like Covid-19. Even respirators (part of the PPE Category and not masks) are in the last priority on the Hierarchy of Controls.

27.     Facial coverings are not comparable to respirators. Leakage occurs around the edges of ordinary facial coverings. Thus, ordinary facial coverings do not provide a reliable level of protection against inhalation of very small airborne particles and are not considered respiratory protection.

28.     For example, during the seasonal forest fires in the summer of 2020, the CDC issued public guidance warning that facial coverings provide no protection against smoke inhalation. That is because facial coverings do not provide a reliable level of protection against the small particles of ash contained in smoke. Ash particles are substantially larger than Covid-19 aerosolized particles.

29.     I have reviewed the Mayfield City School District (MCSD) "Protective Facial Covering Policy During Pandemic/Endemic Events" as set forth in the Policy Manual of the MCSD Board of Education.

30.     Ordinary facial coverings like the ones required by the MCSD facial covering policy do not meet any of the several key OSHA Respiratory Protection Standards for respirators.

31.     Because of the gaps around the edges of facial coverings required by MCSD's policy, they do not filter out Covid-19 aerosols. The policy stating masks will be worn without gaps defies known science that masks worn today cannot be sealed and always have gaps.

32.     The effectiveness of a cloth facial covering falls to zero when there is a 3% or more open area in the edges around the sides of the facial covering.

33.     Most over-the-counter disposable facial coverings have edge gaps of 10% or more. When adult-sized facial coverings are used by children, edge gaps will usually greatly exceed 10%.

34.    Even short breaks (e.g. to eat) expose individuals to Covid-19 aerosols in indoor spaces.

35.    Ordinary cloth facial coverings like the ones required by the MCSD mask requirement do not provide any filtering benefit relative to particles smaller than 511 if not sealed.

36.    Substantial mitigation of Covid-19 particles could be immediately achieved by:

    a.    opening windows and using fans to draw outdoor air into indoor spaces (diluting the concentration of aerosols),

    b.    setting fresh air dampers to maximum opening on HVAC systems,

    c.    overriding HVAC energy controls,

    d.    increasing the number of times indoor air is recycled,

    e.    installing needlepoint ionization technology to HVAC intake fans, and

    f.    installing inexpensive ultraviolet germicide devices into HVAC systems.

35.    All of the above-referenced techniques are more effective and meet standard industrial hygiene hierarchy of controls (practices) for controlling exposures in place for nearly 100 years. The use of cloth facial coverings do not fit within these basic hierarchy of controls since masks are not PPE and cannot be sealed. There are no OSHA standards for facial coverings (masks) as respiratory protection.

36.    Extended use of respiratory PPE is not indicated without medical supervision.

37.    As explained in an article titled "Is a Mask That Covers the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of Potential Hazards?" that was published on April 20, 201, in the *International Journal of Environmental Research and Public Health* and that is attached to this Affidavit as **Exhibit iv,** the following negative effects from wearing masks was reported in the literature:

| Increased risk of adverse effects when using masks: | | |
|---|---|---|
| **Internal diseases** | **Psychiatric Illness** | **Neurological Diseases** |
| COPD | Claustrophobia | Migraines and Headache Sufferers |
| Sleep Apnea Syndrome | Panic Disorder | Patients with intracranial Masses |
| advanced renal Failure | Personality Disorders | Epilepsy |
| Obesity | Dementia | |
| Cardiopulmonary Dysfunction | Schizophrenia | |
| Asthma | helpless Patients | |

|  |  |  |
|---|---|---|
|  | fixed and sedated Patients |  |
| **Pediatric Diseases** | **ENT Diseases** | **Occupational Health Restrictions** moderate |
| Asthma | Vocal Cord Disorders | heavy physical Work |
| Respiratory diseases | Rhinitis and obstructive Diseases |  |
| Cardiopulmonary Diseases |  | **Gynecological restrictions** |
| Neuromuscular Diseases | **Dermatological Diseases** | **Pregnant Women** |
| Epilepsy | Acne |  |
| Atopic |  |  |

Figure 5. Diseases/predispositions with significant risks, according to the literature found, when using masks. Indications for weighing up medical mask exemption certificates.

Example statements made in the paper include the following: "The overall possible resulting measurable drop in oxygen saturation (02) of the blood on the one hand and the increase in carbon dioxide (CO2) on the other contribute to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase, in some cases also to a significant blood pressure increase." Exhibit iv, p. 25. In fact, "Neither higher level institutions such as the WHO or the European Centre for Disease Prevention and Control (ECDC) nor national ones, such as the Centers for Disease Control and Prevention, GA, USA (CDC) or the German RKI, substantiate with sound scientific data a positive effect of masks in the public (in terms of a reduced rate of spread of COVID-19 in the population)." Exhibit iv, p. 24. For these reasons, students who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, or damage.

38.     In summary:

      a.     PPE is the least desirable way to protect people from very small airborne aerosols.

      b.     Facial coverings as required by the MCSD policy are not recognized as PPE since they cannot be sealed and are not covered by the OSHA RPS.

      c.     If PPE were to be used for protection, respirators, not facial coverings as required by the MCSD policy are needed to provide any effective protection from very small airborne aerosols.

      d.     Very small aerosol particles are more likely to be a greater cause of disease than respiratory droplets because they can evade PPE and reach deep into the lungs, whereas respiratory droplets have to work against gravity in order to travel up a person's nose into the sinus.

      e.     Much better alternatives to controlling exposure are available (i.e., engineering controls of dilution — ventilation with increased fresh air and destruction), and should be used to minimize exposures as opposed to masks.

     f.     Individuals who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, and damage due to the overall possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

54.    . Plaintiffs note that the Commonwealth of Pennsylvania was given $7,745,724,379 pursuant to the American Rescue Plan ("ARP") Act of 2021 by agreeing to implement the federal guidelines set forth by the CDC for COVID-19 mitigation efforts. See the attached letter from the U.S. Secretary of Education, attached hereto as **Exhibit "B"**. See also, https://oese.ed.gov/files/2021/08/Pennsylvania-ARP-ESSER-State-Plan-Final.pdf. . On September 8, 2021, Noe Ortega, Ph.D., the Secretary of Education, of Commonwealth of Pennsylvania Department of Education sent a *quid pro quo* threatening letter (in reading it clearly exhibits the mantra 'do as I say or suffer the consequences) attached hereto as **Exhibit "C"**. The letter links to the CDC guidelines available at: https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/operation-strategy.html. The guidelines suggest that a school board would forfeit ARP allocations by making masks optional, and states that have prohibited mask mandates in schools received letter notifying them that they will not receive ARP funds. Accordingly, it seems Defendants have a financial incentive for implementing the mask mandate, despite such a requirement serves no scientific purpose, and subjects individuals who wear masks to the health risks discussed above.

55.    Plaintiff, Renee P. Fagan is the parent and legal guardian of a special needs child minor child MF is aggrieved by the immediate and irreparable injury, loss, and damage suffered by minor special needs child because minor child is unable to wear a mask pursuant to the School Board's mask mandate, which is not only unsupported by science, but which also results

in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT I - 42 U.S.C. §1983 - Violation of Procedural Due Process
### (5th and 14th Amendments) Against All Defendants

56.     Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

57.     In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

58.     In the instant case, Defendants unquestionably acted under the color of state law.

59.     Each Individual Defendant is an elected, voting member of the Council Rock School District Board of Education with the exception of Defendant Dr. Robert Fraser, Ed.d, who is the Superintendent of the Council School District.

60.     Under the Fifth Amendment to the Constitution, no person maybe deprived of life, liberty, or property without due process of law. U.S. Const. Ann., Amendment V.

61.     The Fourteenth applies the protections of the Fifth Amendment to state actors. U.S. Const. Ann., Amendment XIV.

62.     Plaintiffs have constitutionally protected interests in the benefits that come from the not being subject to the Board's mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits.

63.     Defendants actions in imposing mask mandates are discriminatory towards Plaintiff, MF, a special needs minor child and others alike, wherein it inhibits needed therapies creating division between the sects of people regarding of medical condition or other factors .

64.     Defendants' implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard, as the Superintendent instated the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the School Board's own policies and other applicable laws. Such deprivation violates the Fifth and Fourteenth Amendments of the Unites States Constitution.

65.     Plaintiffs were harmed, and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT II - 42 U.S.C. §1983 - Violation of Substantive Due Process
### (Fourteenth Amendment) — Against All Defendants

66.     Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

67.     In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

68.     In the instant case, Defendants unquestionably acted under the color of state law.

69.     Each individual Defendant is an elected, voting member of the Council School District Board of Education with the exception of Defendant Dr. Robert Fraser, Ed.d, who is the Superintendent of the Council School District.

70.     Under the Fourteenth Amendment to the Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

71.     Plaintiff was harmed, and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT III - Violation of Procedural Due Process, Reservation of the People Powers and the Discrimination by Commonwealth and its political subdivisions. (PA Const. Art. I, § 11, 25 & 26) Against All Defendants

72.     Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

73.     Article 1, § 11 of the Pennsylvania Constitution provides, " All courts shall be open; and **every man for an injury** done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

74.     Article 1, § 11 of the Pennsylvania Constitution affords the people of Pennsylvania with right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

75.     Article 1, § 25 of the Pennsylvania Constitution affords the people of Pennsylvania with Reservation of powers in people rights to be free from violations and to guard against transgressions of the high powers which have been delegated, and declared that everything is excepted out of the general powers of government and shall forever remain inviolate.

76. Article 1, § 26 of the Pennsylvania Constitution affords the people of Pennsylvania that people rights have been infringed upon to be free from violations wherein neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

77. Plaintiffs have constitutionally protected interests in the benefits that come from the not being subject to the Board's mask mandate, including the ability to pursue an education without being-subjected to health risks that are not offset by any scientifically provable benefits.

78. Defendants' implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard, as the Superintendent instituted the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the School Board's own policies and other applicable laws. Such deprivation violates Articles 1, §11, 25 & 26 of the Pennsylvania Constitution.

79. Plaintiffs were harmed, and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

**COUNT IV - Violation of Substantive Due Process, Reservation of the People Powers and the Discrimination by Commonwealth and its political subdivisions.**
**(PA Const. Art. I, § 11, 25 & 26) Against All Defendants**

80. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

81.     Article 1, § 11 of the Pennsylvania Constitution provides, " All courts shall be open; and **every man for an injury** done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

82.     Article 1, § 11 of the Pennsylvania  Constitution affords the people of Pennsylvania with right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

83.     Under Article 1, § 11 of the Pennsylvania Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

84.     Article 1, § 25 of the Pennsylvania Constitution affords the people of Pennsylvania with Reservation of powers in people rights to be free from violations and to guard against transgressions of the high powers which have been delegated, and declared that everything is excepted out of the general powers of government and shall forever remain inviolate.

85.     Article 1, § 26 of the Pennsylvania Constitution affords the people of Pennsylvania that people rights have been infringed upon to be free from violations wherein neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

86.     Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the

blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

## RESERVATION OF RIGHTS

Plaintiffs herein expressly reserve their rights in regards to any additional claims to which they may be entitled under federal law as well as under the laws of the Commonwealth of Pennsylvania, including claims arising from any violations of Pennsylvania's Open Meetings Laws or other actions of misconduct that may have been committed by Defendants. Plaintiffs expressly place Defendants on notice of Plaintiffs' intention to initiate removal proceedings at the state court level against Defendants as a result of the infractions Defendants have committed, as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a. Assume jurisdiction of this action;

b. Vacate and set aside the Defendants' mask mandate as well as any other action taken by Defendants to institute the mask mandate and implement the provisions of the mask policy;

c. Declare that the Defendants' masking policy is void and without legal force or effect;

c. Declare that the institution of the mask policy and actions taken by Defendants to implement the mask policy are arbitrary, capricious, based on ignorance due to failure to inquire into facts, otherwise not in accordance with law, and without observance of required procedures;

d. Declare that the mask policy and the actions taken by Defendants to implement the mask policy are in violation of the Constitution and contrary to the laws of the United States and the Commonwealth of Pennsylvania;

e. Temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in

active concert or participation with any of them, from implementing or
enforcing the mask policy and from taking any other action to implement
the masking policy that is not in compliance with applicable law; and

f.     Grant such other and further relief as may be just, equitable, and proper
including without limitation, an award of attorneys' fees and costs to
Plaintiffs.

Respectfully submitted this *22nd* day of September, 2021.

Respectfully Presented,

**All Rights Reserved, Without Prejudice
& Without Recourse**

/s/ _Renee P. Fagan_
Renee P. Fagan, *sui juris pro se*
40 Rembrandt Lane
Holland, PA 18966
Telephone: (267)-784-9142
Renee P. Fagan, individually and as a parent,
of a special needs minor child, MF

OOHISIS @ Hotmail. com